UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-2192006 U.S. Dist. LEXIS 73232

**CINDY L. FOX,** *et al.*                                                                                   **PLAINTIFFS**

**v.**

**LOUIS J. LOVAS,** *et al.*                                                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' competing motions. The Defendant first moved for partial summary judgment on the Plaintiffs' claims for overtime wages under the Fair Labor Standards Act and the Kentucky Wages and Hours Act. Def.'s Mot. Partial Summ. J., Docket Number ("DN") 26. The Plaintiffs have responded. Pls.' Resp., DN 29. The Defendant has replied. Def.'s Reply, DN 38. In their Response, the Plaintiffs also moved for summary judgment on all other issues. Pls.' Resp. & Mot. Summ. J., DN 29. The Defendant has responded. Def.'s Resp., DN 39. Fully briefed, this matter is now ripe for adjudication. For the following reasons the Defendant's motion is GRANTED. The Court reserves ruling on the Plaintiffs' motion until further issues are briefed as outlined below.

## BACKGROUND

The Plaintiffs, Cindy Fox and Sandra Bottoms ("Fox" and "Bottoms," separately, or "Plaintiffs," collectively), filed suit against a number of Defendants in the McCracken County Circuit Court on October 27, 2010. Compl., DN 1-2. As part of their case, the Plaintiffs asserted a claim for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq. Id.* at ¶¶ 56-66, 102-112. On December 22, 2010, the Defendants removed based on the Court's federal question jurisdiction under 28 U.S.C. § 1331. Notice of Removal, DN 1. On January 19, 2011, the Plaintiffs moved to remand all or some of the claims. Pls.' Mot. Remand, DN 7. On

March 23, 2011, the Court granted in part and denied in part the Plaintiffs' motion to remand. Mem. Op. & Order of March 23, 2011, DN 12.  After remanding some claims, the Court retained jurisdiction over the Plaintiffs' claims in Count V (Claims by Fox, Individually, for Unpaid Wages and Liquidated Damages), Count VI (Claims by Fox, Individually for Violations of Kentucky Wages and Hours Act and the Federal Fair Labor Standards Act), Count XII (Claims by Bottoms, Individually, for Unpaid Wages and Liquidated Damages), and Count XIII (Claims by Bottoms, Individually for Violations of Kentucky Wages and Hours Act and the Federal Fair Labor Standards Act).  *Id.* at p. 7.  On April 26, 2011, the parties agreed to dismiss all Defendants save Industrial Maintenance & Gears, Inc. ("IMG").  Order of April 26, 2011, DN 18.

As previously acknowledged by the Court, the facts of this case are largely in dispute. For that reason, the Court discusses the pertinent facts surrounding the Plaintiffs' remaining claims as it addresses each of them below.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere

scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Defendant IMG moves for partial summary judgment on the issue of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kentucky Wages and Hours Act, KRS § 337.010 *et seq.*  Def.'s Mot. Partial Summ. J., DN 26.  The Plaintiffs move for summary judgment on the issues of overtime wages, unpaid wages, liquidated damages, and punitive damages.  Pls.' Mot. Summ. J., DN 29.  The Court will address each issue in turn.

### I.  Unpaid Overtime Wages under the Fair Labor Standards Act and the Kentucky Wages and Hours Act.

Under the Fair Labor Standards Act ("FLSA") and the Kentucky Wages and Hours Act ("KWHA"), an "employee" must be paid at least "one and one-half times the regular rate at which he is employed" if he works more than 40 hours in a workweek.  29 U.S.C. § 207; KRS § 337.285(1).  Certain categories of employees are excluded from this provision, however, and employers do not have to pay overtime wages to those employed in a "bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1); KRS § 337.010(2)(a)2.

In the present case, the Plaintiffs claim that IMG violated the FLSA and the KWHA by failing to pay them overtime wages.  IMG claims that the Plaintiffs are "bona fide administrative employees" and are exempted from the overtime wage provisions.

3

### 1. Statutory structure and the burden of proof under the Fair Labor Standards Act and the Kentucky Wages and Hours Act.

Before determining whether IMG should be granted summary judgment on the issue of overtime wages, the Court finds it necessary to discuss the structural differences between the FLSA and the KWHA. These differences place the burden of proof on defendants under the federal act, while shifting it to plaintiffs in Kentucky law.

Under the Fair Labor Standards Act, employees must be paid overtime if they work more than 40 hours in a workweek. *See* 29 U.S.C. § 207. For the purposes of the FLSA, an "employee" is "any individual employed by an employer." *Id.* § 203(e). Although all employees are initially entitled to overtime under § 207, § 213 exempts certain categories of employees from this requirement, including "any employee employed in a bona fide . . . administrative . . . capacity . . . ." *Id.* § 213(a)(1).

The exemption found in § 213(a)(1) "'is to be 'narrowly construed against the employers seeking to assert [it].'" *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). Furthermore, "the *employer* bears the burden of proving that the exemption applies to the employee in question." *Id.* (emphasis added) (citing *Michigan Ass'n of Gov't Employees v. Michigan Dep't of Corrections*, 992 F.2d 82, 83 (6th Cir. 1993)).

The Kentucky Wages and Hours Act also excludes bona fide administrative employees from overtime wages, but the Act arrives at this conclusion through a structurally different path than the FLSA. As in the FLSA, employees working more than 40 hours per week must be compensated at a rate of one and one-half times their normal hourly pay. *See* KRS § 337.285(1). An employer "who pays any employee less than wages and overtime compensation to which such employee is entitled under [KRS § 337.285] shall be liable to such employee affected for

4

the full amount of such wages and overtime compensation . . . ." KRS § 337.385(1).  Unlike the FLSA, however, the KWHA contains no exemption for bona fide administrative employees. Instead, such individuals are not entitled to overtime wages because they do not fall within the Act's definition of "employee."  *See* KRS § 337.010(2)(a)2 ("'Employee' . . . shall not include any individual employed in a bona fide . . . administrative . . . capacity . . . .").  Whereas the FLSA includes bona fide administrative employees in the definition of "employee" and then exempts them from the overtime pay provision, the same provision in the KWHA never covers such individuals because they are not "employees."

At first blush, the structural difference between the FLSA and the KWHA is seemingly inconsequential.  Both Acts ultimately arrive at the same outcome and exclude bona fide administrative employees from the overtime wage provisions.  The structural difference is not inconsequential, however, because, while the employer bears the burden of proving an employee is exempted from the overtime provision in the FLSA, an individual seeking overtime wages under the KWHA bears the burden of proving that she is an "employee."

The Kentucky Supreme Court explicitly addressed this structural difference in *City of Louisville, Division of Fire v. Fire Service Managers Association*, 212 S.W.3d 89 (Ky. 2006). The court held that when a plaintiff seeks overtime wages under the KWHA, "proof that the claimant is an 'employee' pursuant to that statute is part of his or her *prima facie* case." *Id.* at 94.  The structural difference in the FLSA and the KWHA mandates this outcome because:

> Under the FLSA, all employees are automatically entitled to time-and-a-half overtime pay unless those employees fall under a specified exemption. . . . In contrast, individuals who are employed in a bona fide supervisory capacity are not 'employees' at all under [the KWHA], and thus, are completely excluded from the statute's scope.
>
> This distinct structural difference between the FLSA and [the KWHA] renders the federal case law cited by the [Kentucky] Court of Appeals inapposite.

5

> Likewise, cases relied upon by the [claimant] that require an 'exemption' be narrowly construed against the employer are similarly inapplicable here, since the drafting of [the KWHA] to exclude bona fide supervisory employees from its scope does not constitute an exemption.

*Id.* at 95.

The court's conclusion erects substantial hurdles between plaintiffs and overtime wages under the KWHA. As stated by another court in this district considering the issue:

> The end result of this unique approach to Kentucky wage and hour laws is that [the plaintiff] is put at a double disadvantage in his efforts to recover the unpaid overtime allegedly due to him. Not only must [he] carry the burden of proof to persuade this Court that he is a statutory 'employee' for the purpose of [the KWHA] by showing that he does *not* fall within one of the categories of administrative, supervisory or professional persons outside the definition of employee; he must also face this burden without the benefit of the presumption, now limited to federal labor law, that such exemptions are to be narrowly construed in favor of the plaintiff employee.

*Johnston v. Robert Bosch Tool Corp.*, Civil Action No. 3:08-CV-33, 2008 U.S. Dist. LEXIS 80053, at *62 (W.D. Ky. Oct. 7, 2008) (emphasis original); *see Stathers v. Ice Cream Distribs. of Evansville, LLC*, Civil Action No. 3:06-CV-526, 2007 U.S. Dist. LEXIS 83485, at * 5 (W.D. Ky. Nov. 9, 2007) (quoting *Fire Service Managers Association* and finding "the burden rests with [the plaintiff] to offer some evidence to controvert [the defendant's] assertion on summary judgment that his status as an employee cannot be proved.").

In summary, the structural difference between the FLSA and the KWHA splits the burden of proof between the parties under the federal and state acts. When a federal claim is brought pursuant to the FLSA, the *employer* bears the burden of proving that an employee is exempted from the overtime wage provision by 29 U.S.C. § 213(a)(1). *See Douglas*, 113 F.3d at 70. On the other hand, when a state claim is brought under the KWHA, the *plaintiff* bears the burden of proving that she falls within the statutory definition of "employee" and is entitled to overtime wages. *See Fire Serv. Managers Ass'n*, 212 S.W.3d at 94-95.

What is the practical effect of the split burdens in a case, such as the one *sub judice*, where the plaintiff files a cause of action for unpaid overtime wages under both the FLSA and the KWHA?  The Court has not found, and the parties have not cited, any cases addressing this specific issue.  *Fire Service Managers Association*, *Johnston*, and *Stathers* arose out of claims filed under the KWHA.[1]  They did not have a corresponding FLSA claim, and the courts were not required to confront the unique issue now facing the Court.

Although the Court has not found any cases addressing this issue, an answer is readily apparent.  In an overtime wages case under the FLSA, the employer bears the burden of proving that the employee is exempt because she is a bona fide administrative employee.  If the employer proves that the employee works in such a capacity, it necessarily means that the plaintiff cannot prove she is an "employee" under the KWHA.  The two are mutually exclusive.  With this in mind, the Court addresses whether IMG should be granted summary judgment because the company has shown that the Plaintiffs were employed in a bona fide administrative capacity.

### 2.  Definition of "bona fide administrative employee."

Under the Fair Labor Standards Act, employees working in a bona fide administrative capacity are exempted from the overtime wage provision.  29 U.S.C. § 213(a)(1).  Under the Kentucky Wages and Hours Act, employers do not have to pay overtime to individuals employed in that capacity because they are not "employees."  Neither the FLSA or the KWHA defines "bona fide administrative capacity."  Instead, the Acts leave that term to be defined by administrative regulation.  *See id.*; KRS § 337.010(2)(a)2.

The term "employed in a bona fide administrative capacity" is defined by federal regulation in 29 C.F.R. § 541.200 and by state regulation in 803 KAR 1:070 § 3.  Because the

---

[1] *Johnston* and *Stathers*, although involving a decision under Kentucky law, were in federal court based on diversity jurisdiction found in 28 U.S.C. § 1332.

7

state regulation is a near-verbatim adoption of the federal regulation, the Court refers only to the definition found in 29 C.F.R. § 541.200.

Three elements must be present in order for a person to be employed in a "bona fide administrative capacity." First, an employee must be paid at least $455 per week. 29 C.F.R. § 541.200(a)(1). Second, the employee's "primary duty" must be the "the performance of office or non-manual work directly related to the management or general business of the employer or the employer's customers." *Id.* § 541.200(a)(2). Third, the employee's "primary duty" must include "the exercise of discretion and independent judgment with respect to matters of significance." *Id.* § 541.200(a)(3). "Matters of significance" refers to "the level of importance or consequence of the work performed." *Id.* § 541.202(a).

IMG argues that the Plaintiffs were paid more than $455 per week, that they performed office work that directly related to management of the business, and that they exercised discretion and independent judgment regarding matters of significance. In response, the Plaintiffs do not contest the first two elements of "bona fide administrative capacity." Instead, they argue that they did not exercise "discretion and independent judgment with respect to matters of significance" while employed at IMG. Because the Plaintiffs do not contest the first two elements, the Court finds that those elements have been conceded and will focus solely on the third element.

The term "discretion and independent judgment" is defined by regulation in 29 C.F.R. § 541.202. Generally speaking, "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Whether an employee exercises discretion and independent judgment must be determined "in light of all the

8

facts involved in the particular employment situations in which the question arises." *Id.* § 541.202(b). Discretion and independent judgment is "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources . . . [and] does *not* include clerical or secretarial work, recording or tabulating, or performing other mechanical, repetitive, recurrent or routine work." *Id.* § 541.202(e) (emphasis added). When an employee uses discretion and independent judgment, there is an implicit understanding that she "has authority to make an independent choice, free from immediate direction or supervision." *Id.* § 541.202(c). This does not mean, however, that an employee's decisions must be free from review at a higher level. *Id.* Just because an employee's decision can be reviewed or reversed "does not mean that the employee is not exercising discretion and independent judgment." *Id.* Additionally, an employee may exercise discretion and independent judgment when making "recommendations for action rather than the actual taking of action." *Id.*

29 C.F.R. § 541.202(b) lists multiple factors that indicate an employee exercises discretion and independent judgment in her position. For the present case, the pertinent factors include whether the employee: (1) "has authority to formulate, affect, interpret, or implement management policies or operating practices," (2) "carries out major assignments in conducting the operations of the business," (3) "performs work that affects business operations to a substantial degree, even if the employee's assignments are related to the operation of a particular segment of the business," (4) "has authority to commit the employer in matters that have significant financial impact," (5) "has authority to negotiate and bind the company on significant matters," (6) "provides consultation or expert advice to management," or (7) "investigates and resolves matters of significance on behalf of management." *Id.* When applied to the facts of this case, these factors and the overall definition of "discretion and independent judgment" clearly

demonstrate that the Plaintiffs were "bona fide administrative employees" at IMG.

### 3. Fox was employed in "bona fide administrative capacity" at IMG.

Cindy Fox began working for IMG on March 31, 2008. Fox Answer Interrog. No. 9, DN 26-2. Prior to taking the job, she was approached by Steven Hiber, IMG's manager, and Louis Lovas, the company's chief investor, who told her that "the accounting system at IMG was a 'complete mess' and that they needed someone like her and with her accounting capabilities to 'straighten it out.'" *Id.*; *see* Fox Depo., DN 26-4, p. 9.

In her answers to interrogatories and her deposition testimony in this case, Fox confirmed that one of her job responsibilities was "implementing and maintaining a financial bookkeeping system for IMG." Fox Depo., DN 26-4, p. 1. By virtue of that acknowledgment alone, it is clear she had the "authority to formulate, affect . . . or implement . . . operating practices," and carried "out major assignments in conducting operations of the business." 29 C.F.R. § 541.202(b).

The record reveals more specific examples of how Fox exercised discretion and independent judgment at IMG. Prior to her hiring, the company used the accounting software "Quick Books" to record and manage its financial information. Fox Depo., DN 26-4, p. 1. Shortly after her hiring, Steven Hibner told Fox that he wanted to use a different software and asked her to recommend a different accounting program. *Id.* Fox had prior experience using the "Maxwell" accounting software, and because of "job cost purposes" she recommended that IMG convert to this software. *Id.* at p. 2. Although Fox testified that other IMG employees had input when deciding to covert to Maxwell, she was the only employee with prior experience using the program, and Hibner relied on her assurances that it was "very detailed" in "job cost" accounting. *Id.* at p. 3. In making this recommendation, Fox provided "consultation or expert advice to management." 29 C.F.R. § 541.202(b). Even though the decision to use the Maxwell

software was ultimately authorized by Hibner, Fox still exercised discretion and independent judgment when making her recommendation.  *See id.* § 541.202(c).

Once IMG started using Maxwell, Fox was involved in converting the old the accounting information in Quick Books and other sources to the new program, a task she was still working on when she left the company.  Fox Depo., DN 26-4, p. 2.  The conversion process required Fox to have frequent interactions with Hibner and other IMG employees about the accounting information because "a lot of the stuff that was entered into Quick Books [] was incorrect."  *Id.* at p. 3.  These interactions did not involve Hibner giving Fox orders or otherwise telling her how to handle the accounting job, however.  Instead, as the process of converting software progressed, Fox found errors or other problems in the old accounting information and sought clarification from other IMG employees so that she could enter it correctly into the new program.  *Id.* at pp. 2-3.  Finding and resolving errors was a task left to her discretion and independent judgment.

In addition to implementing a new accounting system at IMG, Fox took it upon herself to reconcile the company's checking accounts at Independence Bank and Paducah Bank.  *Id.* at 7-9.  Although Fox testified that checking account reconciliation is "part of the bookkeeping," no one at IMG directly told her undertake this task.  *Id.* at pp. 8-9.  Instead, Hibner and other IMG employees told Fox that the company's "accounting was a mess and it needed to be cleaned up, and they asked [Fox] to do whatever it took to clean the mess up."  *Id.* at p. 9.  In choosing to reconcile IMG's checking accounts, she performed work that affected the "business operations to a substantial degree."  29 C.F.R. § 541.202(b).

In light of the facts in this particular case, the Court finds that Fox was employed "in a bona fide administrative capacity" because her "primary duty" at IMG was to resolve the

11

company's accounting problems. She was hired specifically for that task and "investigate[d] and resolve[d] matters of significance on behalf of management" in that position. *Id.* Even construing the exemption narrowly, the record clearly reflects that she exercised discretion and independent judgment in her role at IMG. Accordingly, Fox falls within the overtime wage exemption of the FLSA and outside of the scope of "employee" under the KWHA. IMG will be granted summary judgment on the issue of Fox's overtime wages.

### 4. Bottoms was employed in an "bona fide administrative capacity" at IMG.

Sandra Bottoms was hired on a part-time basis in September of 2008 to assist Fox with the reconciliation of IMG's bank accounts. Bottoms Answer Interrog. No. 9, DN 26-3. In March of 2009, she was hired as a full-time employee and assumed an expanded role. *Id.* Specifically, Bottoms worked to resolve IMG's accounting issues, and Steven Hibner told Bottoms that she had whatever tools and as much time as she needed to "get that job done." Bottoms Depo., DN 26-5, p. 11.

Bottoms testified that one of her roles at IMG was to ensure that appropriate payroll taxes were withheld and that the proper quarterly and yearly tax reports were submitted to the government. *Id.* at pp. 7-8. Although Bottoms claims that managing the payroll taxes was merely a "clerical thing," the record shows that Bottoms's role in resolving IMG's payroll tax issues went beyond clerical responsibilities. When Bottoms was hired by IMG, the payroll taxes and reports were "done incorrectly and not submitted on a timely basis and so forth." *Id.* at 8. In order to resolve these problems, Bottoms worked with the Internal Revenue Service and the Kentucky Department of Revenue. *Id.* Leslie Hibner, another IMG employee, had "done [the taxes and reports] inappropriately and inaccurate[ly] and she wanted them done accurately." *Id.* Thus, Steve Hibner and Leslie Hibner asked Bottoms to "correct the way payroll had been

done[.]" *Id.* When Bottoms found a problem with the payroll taxes, she would notify Steven Hibner, Leslie Hibner, or Cindy Fox, and was subsequently told to contact the appropriate official or agency and resolve the problem. *Id.* at pp. 8-9. In that regard, the record shows that Bottoms was given authority to speak on behalf of IMG in order to resolve the local, state, and federal tax issues. In doing so, Bottoms claims she "saved the company many, many, many thousands of dollars in penalties." *Id.* at p. 9.

The Court finds that, even construing the FLSA exemption narrowly, Bottoms exercised discretion and independent judgment in resolving IMG's tax issues and was a "bona fide administrative employee." By resolving IMG's tax issues, she carried "out major assignments in conducting the operations of the business," had "authority to commit the employer in matters that [had a] significant financial impact," had "authority to negotiate and bind the company on significant matters," and "investigate[d] and resolve[d] matters of significance on behalf of the company." 29 C.F.R. § 541.202(b).

Accordingly, Bottoms was employed in a "bona fide administrative capacity" at IMG, and falls within the overtime wage exemption of the FLSA and outside of the scope of "employee" under the KWHA. IMG will be granted summary judgment on the issue of Bottoms's overtime wages.

## II. Unpaid Wages and Liquidated Damages under the Kentucky Wages and Hours Act.

The Plaintiffs have moved for summary judgment on the issue of unpaid wages and liquidated damages under the Kentucky Wages and Hours Act ("KWHA"). Under KRS § 337.385(1), "any employer who pays an employee less than wages . . . to which such employee is entitled . . . by virtue of [KRS § 337.055] shall be liable to such employee affected for the full amount of such wages . . . ."

KRS § 337.055 provides:

> Any employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him; not later than the next normal pay period following the date of dismissal or voluntary leaving or fourteen (14) days following such date of dismissal or voluntary leaving whichever last occurs.

Fox and Bottoms were terminated on July 14, 2010. Their last pay date was July 9, 2010, and they claim that IMG has violated KRS § 337.055 by not paying the wages they earned between July 9 and July 14. Bottoms also claims that IMG failed to pay a bonus she was owed under the terms of her employment.

The Plaintiffs' claims under KRS §§ 337.385(1) and 337.055 overlook an important distinction in Kentucky's wages and hours laws. It appears that the KWHA only grants a cause of action for unpaid wages and liquidated damages to those individuals who fall within the statutory definition of "employee." For the purposes of liability under KRS § 337.385, individuals employed in a bona fide administrative capacity are not "employees" as that term is defined in the KWHA. *See* KRS § 337.010(2)(a)2. Having found that the Plaintiffs are bona fide administrative employees under the FLSA, the Court is of the opinion that the protections of KRS §§ 337.385(1) and 337.055 may not apply to the Plaintiffs because they fall outside of the scope of "employee" as that term is defined by the KWHA.

The Court requests briefs on this issue. Within fourteen (14) days of the entry of this memorandum opinion and order, the parties shall file simultaneous briefs. When briefing this issue, the parties should consider the following cases: *Whitewood v. Robert Bosch Tool Corp.*, 323 Fed. Appx. 397, 398 (6th Cir. 2009), *Roby v. Midstates Indus. Group, Inc.*, Civil Action No. 3:03-CV-149, 2007 U.S. Dist. LEXIS 50694, at *2-3 (W.D. Ky. July 6, 2007), *Haeberle v. McCall, Currens, Topor & Thompson, P.S.C.*, 2007 Ky. App. Unpub. LEXIS 9, at *20 (Ky. Ct. App. April 20, 2007), and *Rawlings v. Breit*, 2005 Ky. App. Unpub. LEXIS 780, at *17 (Ky. Ct.

App. June 17, 2005).

### III.     Punitive Damages

The Plaintiffs have moved for summary judgment on the issue of punitive damages. Because the Court has reserved its opinion on the Plaintiffs' claims for unpaid wages and liquidated damages, it must also reserve its ruling on punitive damages. If the Court dismisses the Plaintiffs' claims for unpaid wages and liquidated damages, the claim for punitive damages will also be dismissed. As previously stated by this Court, "A claim for punitive damages . . . is not a separate cause of action, but rather an available remedy." Mem. Op. & Order of March 23, 2011, DN 12, p. 6 n.1 (citing *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 548, n. 1 (E.D. Ky. 2001)). The Court will rule on the issue of punitive damages at such time as it rules upon the Plaintiffs' claim for unpaid wages and liquidated damages.

## CONCLUSION

For the foregoing reasons Defendant IMG's motion for partial summary judgment is **GRANTED** and the Plaintiffs' causes of action for overtime wages under the Fair Labor Standards Act and the Kentucky Wages and Hours Act are **DISMISSED**.

**IT IS HEREBY ORDERED** that within fourteen (14) days of the entry of this memorandum opinion and order, the parties shall file simultaneous briefs on the issue of whether the Plaintiffs are entitled to unpaid wages and liquidated damages because they are "employees" under the Kentucky Wages and Hours Act.

**IT IS HEREBY FURTHER ORDERED** that the telephonic status conference scheduled for March 2, 2012, at 8:45am CST is **CANCELLED**. This matter is set for a **telephonic status conference** on **April 12, 2012 at 9:00am CST.**